UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| ANNA Z., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **REPORT AND RECOMMENDATION TO REVERSE AND REMAND THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:22-cv-00781 <br><br> District Judge Dale A. Kimball <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Anna Z.[1] brought this action for judicial review[2] of the denial of her application for disability insurance benefits by the Acting Commissioner of the Social Security Administration.[3] The Administrative Law Judge ("ALJ") who addressed Ms. Z.'s application determined she did not qualify as disabled.[4] Ms. Z. argues the ALJ legally erred by misrepresenting record evidence and ignoring evidence favorable to a finding of disability.[5] She contends this error means the ALJ's decision cannot be supported by substantial evidence, and necessitates remand.[6]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the plaintiff is referred to by her first name and last initial only.

[2] (*See* Compl., Doc. No. 2.)

[3] *See* 42 U.S.C. §§ 401–434.

[4] (Certified Tr. of Admin. R. ("Tr.") 12–20, Doc. No. 6.)

[5] (*See* Opening Br. 4–10, Doc. No. 7.)

[6] (*See id.* at 10.)

1

Because the ALJ erred in his consideration of Ms. Z.'s heart condition and failed to address other evidence related to her impaired cardiac functioning, it is impossible to effectively review his analysis. Accordingly, the undersigned[7] recommends the district judge reverse the Commissioner's decision and remand the case for additional administrative proceedings.

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision. This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[8] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[9]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[10] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[11] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings

---

[7] This case is referred to the undersigned magistrate judge under 28 U.S.C. § 636(b)(1)(B). (Doc. No. 5.)

[8] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[9] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[11] *Id.* at 1154 (internal quotation marks omitted).

[12] *Id.* (internal quotation marks omitted).

from being supported by substantial evidence."[13] And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[14]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[15] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[16]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;
2) she has a severe medically determinable physical or mental impairment;
3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);
4) she has the residual functional capacity to perform past relevant work; and
5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[17]

---

[13] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[14] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[15] 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A).

[16] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

[17] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The claimant has the burden, in the first four steps, of establishing disability.[18] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[19]

## PROCEDURAL HISTORY

Ms. Z. applied for disability insurance benefits on July 13, 2020.[20] After an administrative hearing,[21] the ALJ issued a decision on December 14, 2021, finding Ms. Z. not disabled and denying benefits.[22] At step two of the sequential evaluation, the ALJ found Ms. Z. had the severe impairments of "chronic heart failure with preserved ejection fraction; hypertrophic cardiomyopathy; ventricular tachycardia, status post Boston Scientific dual-chamber placement; obesity; obstructive sleep apnea; [and] degenerative disc disease."[23] At step three, the ALJ found these impairments did not meet or medically equal an impairment listing.[24]

The ALJ found Ms. Z. had the residual functional capacity ("RFC")[25] to perform sedentary work, with additional exertional and functional limitations.[26] Specifically, the ALJ

---

[18] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[19] *Id.*

[20] (Tr. 226–27.)

[21] (*See* Tr. 52–76.)

[22] (Tr. 9–24.)

[23] (Tr. 14.)

[24] (Tr. 15–16.)

[25] A claimant's RFC is the most she can do in a work setting considering her limitations. *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1 (July 2, 1996). In assessing RFC, the ALJ considers all medically determinable impairments and all relevant medical and other evidence in the record. *See* 20 C.F.R. § 404.1545(a)(2)–(3).

[26] (*See* Tr. 16.)

limited Ms. Z. to frequently balancing; occasionally climbing ramps and stairs; occasionally stooping, kneeling, crouching, and crawling; occasionally being exposed to pulmonary irritants; never climbing ladders, ropes, or scaffolds; never being exposed to hazards; and the ability to perform goal-oriented but not assembly-line-paced work.[27]  After considering the testimony of a vocational expert, the ALJ found Ms. Z. capable of performing other jobs existing in significant numbers in the national economy.[28]  Therefore, the ALJ found Ms. Z. not disabled and denied her claims.[29]

The Appeals Council denied Ms. Z.'s request for review,[30] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Ms. Z.'s claim of error relates to the ALJ's evaluation of the record evidence.  She argues the ALJ erred by mischaracterizing evidence and ignoring evidence favorable to a disability finding.[31]  The undersigned recommends reversal because the ALJ mischaracterized a critical aspect of Ms. Z.'s heart condition—the impact of her heart ejection fraction tests.  Moreover, the ALJ failed to consider evidence showing significant deficits in Ms. Z.'s cardiac functioning. Where the ALJ found Ms. Z.'s heart condition constituted a severe impairment, the combination

---

[27] (*Id.*)

[28] (Tr. 20.)

[29] (*Id.*)

[30] (Tr. 1–3.)

[31] (Opening Br. 4–5, Doc. No 7.)

of these evidentiary errors makes it impossible to effectively review the ALJ's decision.[32] For this reason, the Commissioner's decision should be reversed and the case remanded for additional consideration.

In this case, as Ms. Z. points out, the ALJ mischaracterized the evidence related to her heart failure. At step two of the sequential analysis, the ALJ found Ms. Z.'s "chronic heart failure with preserved ejection fraction" to be a severe impairment.[33] The problem is that after acknowledging Ms. Z.'s heart condition included preserved ejection fraction, the ALJ relied on evidence of preserved ejection fraction to support his RFC determination and his finding of nondisability. For instance, the ALJ relied on two different echocardiograms showing Ms. Z. had a "stable" and a "low normal" left ventricle ejection fraction.[34] In part, the ALJ also relied on "repeated ejection fraction within normal limits" to find Ms. Z.'s treating cardiologist's opinion minimally persuasive.[35] This reliance makes the ALJ's decision internally contradictory: while recognizing Ms. Z.'s condition did not involve reduced ejection fraction, the ALJ relied on the lack of reduced ejection fraction to support his decision. This amounts to a misunderstanding or mischaracterization of the evidence; by definition, a stable or low-normal

---

[32] Ms. Z. also argues the ALJ erroneously considered and failed to consider other critical evidence. (*See id.* at 4–9.) However, where reversal is recommended on these grounds, Ms. Z.'s other claims of evidentiary error are not addressed.

[33] (Tr. 14.)

[34] (Tr. 17 (citing Tr. 705, 1249).)

[35] (*See* Tr. 19.) Although the ALJ notes "repeated" normal ejection fraction tests in this section of his decision, he cites to only one echocardiogram—which appears more than once in the record. (*Compare* Tr. 2103, *and* Tr. 966, *with* Tr. 1249.) The Commissioner relies in part on the ALJ's characterization of the cardiologist's medical opinion as minimally persuasive to argue the nondisability finding is supported by substantial evidence. (*See* Answer Br. 15, Doc. No. 14.) But the ALJ's evaluation of this opinion is deficient, given his flawed reliance on Ms. Z.'s normal ejection fraction testing to discount the opinion.

ejection fraction cannot be used to support a finding of nondisability where the impairment includes preserved ejection fraction.

Ms. Z. argues that instead of relying on her ejection fraction, the ALJ should have considered her cardiopulmonary exercise testing results—but the ALJ ignored them entirely.[36] In her answer brief, the Commissioner acknowledges the ALJ failed to "discuss some of the specific test results of record, particularly concerning [Ms. Z.'s] cardiac functioning."[37] The Commissioner then details other evidence related to Ms. Z.'s heart failure, noting that her exercise capacity testing revealed stable results—and arguing the ALJ did not need to discuss every piece of evidence.[38] Overall, the Commissioner argues that substantial evidence supports the ALJ's findings.[39]

The ALJ's decision must be reversed because not only did he err by misapprehending the record evidence (relying on normal ejection fraction to find Ms. Z. not disabled when normal ejection fraction is to be expected based on her diagnosis)—but he failed to address other evidence directly applicable to Ms. Z.'s heart condition, such as her cardiopulmonary exercise testing. Among other things, this testing showed abnormal results. Ms. Z. had a "severely reduced functional capacity" which "remained abnormal when unadjusted for body weight" and "is associated with increased mortality in patients with heart failure."[40] But the ALJ did not

---

[36] (Opening Br. 6, Doc. No. 7.)

[37] (Answer Br. 16, Doc. No. 14.)

[38] (*See id.* at 16–17 (citing Tr. 683–84, 593–94).)

[39] (*Id.* at 17.)

[40] (Tr. 684.)

address this.  Instead, the ALJ's only references to testing or clinical findings related to Ms. Z.'s heart conditions are off point.  His sole references relate to:

- Ms. Z.'s normal ejection fraction[41] (which is meaningless, given her diagnosis of preserved ejection fraction);
- the fact that her device was functioning normally[42] (referring to her implanted defibrillator)[43]—(which has limited applicability considering that Ms. Z. had severely reduced functional capacity despite the device);
- the fact that her heart rate was regular at one visit[44] (which only relates to Ms. Z.'s ventricular tachycardia, not her chronic heart failure or hypertrophic cardiomyopathy); and
- the fact that her pulmonary artery was normal[45] (the only clinical reference by the ALJ which may bear on Ms. Z.'s chronic heart failure).

The ALJ's only other references to Ms. Z.'s heart condition were to immaterial copycat statements in records of medical visits.  For instance, the ALJ noted some records showed Ms. Z. was in no acute distress.[46]  But it is not apparent how Ms. Z.'s status of "no acute distress" at discrete medical visits supports a finding of substantial evidence of nondisability.  The ALJ also

---

[41] (Tr. 17 (citing. Tr. 705, 1249).)

[42] (*Id.* (citing Tr. 1250).)

[43] (*See* Tr. 360.)

[44] (Tr. 17 (citing Tr. 1339).)

[45] (*Id.* (citing Tr. 1128).)

[46] (*Id.* (citing Tr. 1339, 1519, 2096).)

noted that Ms. Z. self-reported she was doing "fairly well from a cardiac standpoint."[47] But the ALJ's reliance on these statements to the exclusion of medical testing and records does not support a finding of substantial evidence. In fact, even these statements constitute mischaracterizations. All three statements are from the same medical visit and reflect duplicate records in the administrative record, although the ALJ implies they are from separate visits.[48] And the ALJ takes Ms. Z.'s self-report out of context. The full sentence in the record is: "Patient states she is doing well from a cardiac standpoint and is just awaiting to be listed on the heart transplant list. Patient states she is working hard to try to lose weight in order to qualify for heart transplant."[49] Notably, nowhere in his opinion does the ALJ even mention Ms. Z.'s possible need for a heart transplant, despite regular references in Ms. Z.'s medical records.[50]

The Commissioner is correct that the ALJ need not discuss every piece of evidence,[51] but failing to address evidence showing significant deficits in Ms. Z.'s cardiac functioning—after misconstruing evidence related to her ejection fraction—is fatal to the ALJ's decision. Not only does it undermine the ALJ's analysis of Ms. Z.'s severe heart impairments, it makes the ALJ's

---

[47] (*Id.* (citing Tr. 966, 1249, 2103).)

[48] (*Compare* Tr. 966, *with* Tr. 1249, *and* Tr. 2103.)

[49] (Tr. 966, 1249, 2103 (cited by the ALJ at Tr. 17).)

[50] (*See, e.g.*, Tr. 719 (noting need for a transplant work up); Tr. 1467 (compatibility testing form for heart transplant); Tr. 1469 (pre-heart transplant education completion); Tr. 1471 (noting Ms. Z. is awaiting organ transplant); Tr. 1472 (noting Ms. Z. was not appropriate for transplant at that time due to high body mass index); Tr. 1493–1505 (heart transplant educational materials and acknowledgment of receipt by Ms. Z.); Tr. 1510 (noting transplant evaluation testing ordered); Tr. 1523 (noting Ms. Z. was being evaluated for heart transplantation); Tr. 1524 (noting review of post-heart transplant issues with Ms. Z.); Tr. 1529 (heart transplant registry report signed by Ms. Z).)

[51] *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

9

rationale impossible to follow and his decision impossible to affirm.  The Commissioner's claim that the ALJ recited Ms. Z.'s treatment history[52] is unsupported by the ALJ's decision.  The Commissioner herself recited Ms. Z.'s treatment history,[53] but almost none of the information, test results, or clinical findings outlined by the Commissioner appear in the ALJ's decision—or appear to have been considered by him.[54]

Where the ALJ misconstrued the significance of Ms. Z.'s normal ejection fraction and entirely failed to consider other material tests and clinical findings related to her cardiac functioning, it is impossible to conclude the ALJ applied the correct legal standards or that his decision is supported by substantial evidence.  This requires reversal.  It is the ALJ who must weigh the evidence in the first instance.[55]  The court "cannot substitute [the Commissioner's] analysis of the record for the ALJ's lack of analysis."[56]  Because the ALJ erred in his consideration of Ms. Z.'s ejection fraction in his RFC analysis—and failed to address other critical record evidence related to her cardiac functioning—it is impossible for the court to effectively analyze his decision.  Because the ALJ's decision failed to "provide this court with a

---

[52] (*See* Answer Br. 11, Doc. No 14.)

[53] (*See id.* at 3–7.)

[54] The Commissioner tries to salvage the ALJ's findings by arguing, among other things, that the ALJ noted Ms. Z. was on medications to manage her heart condition.  (*See id.* at 12.)  Even this is inaccurate.  The medication references in the ALJ's decision relate to medication to manage Ms. Z.'s musculoskeletal and mental-health conditions, not heart medication.  (*See* Tr. 15, 17–18 (citing Tr. 405–06, 488, 836, 848).)

[55] *See Robinson v. Barnhart*, 366 F.3d 1078, 1084–85 (10th Cir. 2004) ("Affirming [a] post hoc effort to salvage the ALJ's decision would require us to overstep our institutional role and usurp essential functions committed in the first instance to the administrative process."); *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) (noting same concept).

[56] *Ochsner v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01683, 2021 U.S. Dist. LEXIS 240588, at *18 (D. Ariz. Dec. 16, 2021) (unpublished).

sufficient basis to determine that appropriate legal principals have been followed,"[57] his decision must be reversed.[58]

Significantly, the ALJ's error cannot be considered harmless. By way of example, in *Allen v. Barnhart*,[59] the Tenth Circuit rejected a harmless-error argument and declined to make alternative factual findings to support an ALJ's decision.[60] The court cautioned: "to the extent a harmless-error determination rests on legal or evidentiary matters not considered by the ALJ, it risks violating the general rule against post hoc justification of administrative action."[61] The court noted that it only:

> may be appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.[62]

This does not qualify as an exceptional circumstance. Where the ALJ's decision contains no discussion of Ms. Z.'s cardiopulmonary exercise test results or her heart transplant status, it cannot be said no reasonable factfinder could have resolved Ms. Z.'s application for disability benefits differently. (And this is without even considering the spate of other heart-related evidence the ALJ failed to address or mention.)[63] Under the circumstances, the court cannot

---

[57] *See Jensen*, 436 F.3d at 1165.

[58] *Id.*

[59] 357 F.3d 1140.

[60] *Id.* at 1144–45.

[61] *Id.* at 1145.

[62] *Id.*

[63] (*See* Opening Br. 6–9, Doc. No. 7 (outlining evidence); Answer Br. 3–7, Doc. No. 14 (outlining evidence).) The court need not address the other evidence the ALJ failed to consider

conclude the ALJ considered the relevant material but merely analyzed it improperly. Making factual findings in the first instance regarding Ms. Z.'s ejection fraction and her significant deficits in cardiac functioning "would be an improper exercise in judicial factfinding rather than a proper application of harmless-error principles."[64]

## CONCLUSION

The ALJ legally erred by misconstruing the record evidence regarding Ms. Z.'s ejection fraction and failing to consider other material evidence related to her significant deficits in cardiac functioning and heart transplant status. For this reason, the case should be reversed and remanded for further consideration.

## RECOMMENDATION

The undersigned RECOMMENDS the district judge REVERSE the Commissioner's decision and REMAND the case for additional administrative proceedings. The court will send copies of this report and recommendation to all parties, who are notified of their right to object.

---

where the ALJ's decision should be reversed on the grounds of his erroneous consideration of evidence related to Ms. Z.'s cardiac functioning. On remand, the evidence should be reconsidered in full. *Cf.* HALLEX I-2-8-18, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-8-18.html [https://perma.cc/48P9-WLBE] (last updated March 26, 2017).

[64] *Allen*, 357 F.3d at 1145.

Any objection must be filed within fourteen days of service.[65]  Failure to object may constitute waiver of objections.

        DATED this 3rd day of January, 2024.

                                        BY THE COURT:

                                        _____
                                        Daphne A. Oberg
                                        United States Magistrate Judge

---

[65] *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).